UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       Cr. No. 19-20522

v.                                  Hon. Stephen J. Murphy, III

EARL ROBERTS,

        Defendant.

_____/

**Government's Sentencing Memorandum**

Defendant Earl Roberts stands convicted of Three Counts of Embezzlement of Union Assets in violation of 29 U.S.C. § 501(c). For the reasons stated in this memorandum, the government requests that the Court accept the parties' Rule 11 Plea Agreement and sentence Roberts to **ten months' imprisonment.** Such a sentence is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I. FACTS

In November of 2012, Earl Roberts became President of Local 4 of The United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial Service Workers International Union ("USW") located in Yale, Michigan. PSR ¶¶ 7–8. Local 4 members are employees of the Flint Hills Resources ("FHR") plant in Marysville, Michigan, and Local 4 is funded through FHR employee contributions withdrawn from their paychecks each month. PSR ¶ 7.

At the time he became Local 4 President, Roberts was an employee of FHR making approximately $3,891.33 monthly as a mechanic. PSR ¶ 55. But only one month after he became President, Roberts wrote himself an unauthorized $2,700 check from the Local 4 checkbook. That first incident led to more fraud: a few weeks later, he took $600 cash out of Local 4's account. Two weeks after that, he had an $853.56 cashier's check issued to Amanda Wilson (his girlfriend at the time), taken from the Local 4 account. This was the beginning of a long stream of cash withdrawals, checks, and money orders that Roberts stole from Local 4's account. PSR ¶ 9.

Six months after he started stealing funds from Local 4's account, Roberts was fired from his position at FHR. *See* EXHIBIT A. He had already stolen $8,164.74. *See* Exhibit B. As Roberts appealed his firing from FHR, he continued to serve as Local 4 President and continued to write himself checks and take cash

from Local 4 in increasing amounts. *See* Exhibit B. On July 15, 2013, Roberts signed his first Annual Report (LM3) for Local 4, misrepresenting the funds in Local 4's account and sending it to the USW. PSR ¶ 10.

By November 2013, Roberts changed his method of fraud. Instead of writing checks to himself and Wilson, or taking out cash, Roberts wrote checks directly to local stores, most frequently to J&D, a local gas station and convenience store, where he bought household items such as food, cigarettes, and beer.

On March 14, 2014, a few months later, Roberts successfully got his job reinstated at FHR and was paid $26,000 in back pay. EXHIBIT A. But he was not satisfied; he continued to write checks out of Local 4's account for his household expenses. On May 16, 2014, Roberts bought himself a Harley Davidson for over $4,000. EXHIBIT A.

About six months after his job was reinstated, Roberts was out of the plant again, this time on disability for injuring his rotator cuff. *See* EXHIBIT A. Roberts continued to take funds from Local 4, at the same time he was racking up other debts. Earl Roberts filed for Chapter 7 protection in Bankruptcy on January 23, 2015. PSR ¶ 57. According to Bankruptcy filings he was being paid $5,500 monthly from FHR and had debts of $31,000 that he could not pay. He owed for past due cell phones, energy bills, local shops, and $10,000 to a local used car dealership. EXHIBIT C. Roberts' debts were ultimately discharged in Chapter 7.

PSR ¶ 57, EXHIBIT C. All during this time, Roberts continued to write checks and take money from Local 4.

Roberts never returned to work at FHR before the plant closed in May 2015, but he remained as Local 4 President throughout this time period. *See* PSR ¶7, EXHIBIT A. His last cash withdrawal from Local 4 was for $700 on April 17, 2015. The FHR plant closed a few weeks later and Local 4's operations were suspended.

In total, Roberts took cash from or wrote a check for his own use **one hundred and ten** separate times from December 2012 until April 2015. Those thefts totaled **$45,916** in loss to Local 4. PSR ¶¶ 9, 11, 13. He also filed three false Annual Reports with the USW, misrepresenting the funds in Local 4's account. PSR ¶ 10.

## II.   ARGUMENT

Earl Roberts had the American dream within his grasp. He had a good job, a committed girlfriend, and he lived in a home with his blended family. He was selected to be the President of his local union. But that wasn't enough for him. Just a month after he became Local 4's President, he began stealing. Over one hundred times, he stole money from Local 4, money from his coworkers, from his friends. He continued taking from Local 4—for two and a half years, and he only stopped because Local 4 shut down when the FHR plant closed.

4

While some of the money stolen from Local 4 went for household expenses such as beer, cigarettes, and food at a local convenience store, Roberts took out most of the money in the form of cash. Even with the extra cash he took, Roberts racked-up debts for his living expenses that he never paid, declaring bankruptcy while still stealing from Local 4. Even in times where Roberts seemed to be getting back on track, when his job was reinstated and he was paid a large lump sum of back pay, he didn't slow in taking Local 4 funds. Instead, Earl Roberts bought himself a Harley.

This is not a victimless crime. To be sure, a local union is an entity, rather than a person. But Local 4 was much more: it was made from the hard work and sweat of those workers who supported it year after year, contributing a portion of each and every paycheck. It was hard times for the workers of Local 4 as their employer, FHR, was closing the Michigan plant; they were all losing their jobs. The funds should have been used by Local 4 to support those who needed help. Instead, those funds were stolen by one of their own, Earl Roberts, the co-worker that they relied on to represent them.

## I. SENTENCING GUIDELINES CALCULATION AND RELEVANT 3553(a) FACTORS

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not

greater than necessary." Here, the government seeks a sentence within the guidelines.

### A. The Sentencing Guidelines Range

Defendant pleaded guilty to Counts 1-3 of Embezzlement of Union Assets. Plea Agreement ECF No. 24, PageID.113-122. The government and the defendant agreed in the Rule 11 that the correct guideline range is **6 to 12 months**. Plea Agreement, ECF No. 24, PageID.116. Probation has calculated a guideline range of **10 to 16 months.** PSR ¶¶ 62. The difference in the calculation is attributed to the two-level increase the probation department assessed for the defendant's abuse of private or public trust. *Id.* The government contends that the appropriate guideline range is 6 to 12 months, as calculated by the parties in connection with the Rule 11 Plea Agreement, and that a sentence within this range will satisfy the purposes of 18 U.S.C. § 3553(a).

In the Rule 11 (c)(1)(C) Plea Agreement, the parties agreed that they will be bound by the Plea Agreement if the Court imposes a sentence of imprisonment within the sentencing guideline range agreed to in the Plea Agreement of 6 to12 months. Plea Agreement, ECF No. 24, PageID.116. Thus, the terms of the Plea Agreement effectively cap Roberts' sentence at 12 months. PSR ¶¶ 63.

### B. The Factors under 18 U.S.C. § 3553(a)

#### 1. The Nature and Circumstances of the Offense.

Embezzling funds from a Union while acting as its President involves a breach of confidence. Roberts breached his coworkers' confidence over 100 times. He seized every opportunity to maximize his theft by starting shortly after being chosen President and not ending until a few weeks before the plant was closing.

Roberts didn't limit his scheme to his own doings. He involved his girlfriend, drawing her into the scheme by writing Local 4 checks to her. He changed his scheme several times to cover his trail. Finally, he concealed the fraud by falsifying Local 4's annual reports three separate times, allowing him to continue it.

This was not a simple theft; it involved a scheme that was executed over two and a half years. During that time period, there were several opportunities for Roberts to stop and live honestly, particularly when he received a large check for back pay and was working again. Instead of stopping, he continued to clear out Local 4's account for his own use, taking advantage of his coworkers, who were all losing their own jobs.

### 2. History and Characteristics of the Defendant.

Roberts had a history of good jobs in manufacturing, including his job at FHR bringing home a decent living. But he didn't stay working full-time for long periods. Of the years he was embezzling from Local 4, he only reported to work for two six-month periods. He was out while appealing his firing and he was out

for a disability for the last year the plant was in operation. He is currently unemployed and collects disability payments.

Roberts was known in his community for being a person who took advantage of others. He had a prior felony conviction for writing a bad check to a local market. PSR ¶ 28. He failed to pay a number of local vendors when he filed for bankruptcy protection. PSR ¶ 57, EXHIBIT C, and he had a reputation for not paying back debts owed to his coworkers. Former Local 4 President Douglas Montgomery said of Roberts, "I wasn't surprised that you called me because people told me that Roberts doesn't pay up after he borrows money from you." EXHIBIT A.

### 3. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense.

A sentence of imprisonment within the guideline range will foster respect for the law, whether it is served by home detention or incarceration. Payment of restitution without imprisonment is not an adequate punishment. Roberts is not working and has no means of paying restitution aside from his government subsidy. PSR ¶¶ 52, 90. A sentence should include imprisonment within the guidelines because it is just and will promote respect for the law.

### 4. Adequate deterrence and protection of the public.

This was not a victimless crime; Roberts drained all Local 4's resources. These resources were specifically for the benefit of Local 4's members, members

who were all losing their jobs as the plant was closing. These hard-working men and women had money taken out of each paycheck for years so that Local 4 would support them in their time of need. Instead, their dues were cleaned out by Roberts. A sentence within the guideline range will help deter others from believing that funds of Union co-workers are theirs for the taking.

**5.     Kinds of sentences available and the need to avoid unwarranted sentencing disparities.**

Roberts' sentence should be consistent with sentences provided for other similar crimes and therefore should be within the guidelines.

## IV. CONCLUSION

For the reasons stated above, the government asks the Court to accept the parties' Rule 11 Plea Agreement and impose a sentence of imprisonment of **ten months.**

        Respectfully submitted,

        DAWN N. ISON
        United States Attorney

        *s/ Leslie Wizner*
        LESLIE MATUJA WIZNER (P42081)
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, MI 48226
        Phone: (313) 226-9766
        Cell: (313) 269-4760
        leslie.wizner@usdoj.gov
        Dated: March 15, 2022

**Certificate of Service**

I certify that on March 15, 2022, I electronically filed the foregoing document with the Clerk of the Court of the Eastern District of Michigan using the ECF system that will send notification to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF System.

*s/ Leslie Wizner*
LESLIE MATUJA WIZNER
Assistant U.S. Attorney
United States Attorney's Office